[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15549
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00159-WKW-WC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID GADSDEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(October 5, 2015)

Before MARCUS, MARTIN and JULIE CARNES, Circuit Judges.

PER CURIAM:

David Gadsden appeals his 120-month sentence for conspiracy to commit wire fraud, 18 U.S.C. § 1349.  Gadsden pleaded guilty to opening or causing others to open bank accounts with minimum deposits and using bad checks from those accounts to buy things from various businesses.  Law enforcement agents identified over 200 members of the conspiracy.

In calculating Gadsden's offense level, the district court imposed a two-level sophisticated-means enhancement, United States Sentencing Guidelines § 2B1.1(b)(10)(C), and a fourteen-level enhancement based on a loss calculation of $1,000,000, *id.* § 2B1.1(b)(1)(H).  On appeal, Gadsden first argues that the district court erred by concluding that the monetary loss was $1,000,000 because the government had failed to substantiate that amount.  He next argues that the district court erred in overruling his objection regarding sophisticated means because the scheme was simple and no fraudulent identities were used.  After careful review, we affirm.

## I.

This Court reviews a district court's determination of monetary loss for clear error.  *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011).  "A sentencing court need only make a reasonable estimate of the loss, given the available information."  *United States v. Lee*, 427 F.3d 881, 893 (11th Cir. 2005).  If the loss amount is more than $400,000 but not more than $1,000,000, then the

2

defendant's offense level increases by 14.  USSG § 2B1.1(b)(1)(H–I).  If the loss amount is more than $1,000,000 but not more than $2,500,000, then the offense level increases by 16.  *Id.* § 2B1.1(b)(1)(I–J).

Invited error occurs when a party induces or invites the district court into making an error.  *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009).  If a party induces or invites the district court into making an error, we are precluded from reviewing that error on appeal.  *Id.*  For example, in *United States v. Love*, 449 F.3d 1154 (11th Cir. 2006), we held that the defendant was precluded from appealing a term of supervised release he had invited the district court to impose.  *Id.* at 1157.  The defendant invited this error by expressly acknowledging in his plea agreement the district court's ability to impose the term and by "repeatedly request[ing]" supervised release in lieu of additional jail time at his sentence hearing.  *Id.*

In similar fashion, we are precluded from reviewing the district court's loss-amount finding because Gadsden invited the error he contends the district court made.  At the sentence hearing, he objected to the government's loss-amount figure of around $1.4 million, which would have resulted in a 16-level increase under the Guidelines.  USSG § 2B1.1(b)(1)(I).  The district court asked him what loss amount and corresponding increase he was suggesting, and Gadsden responded that the loss amount was "definitely above 400,000," which is the

3

bottom end for a 14-level increase.  *Id.* § 2B1.1(b)(1)(H).  After being given time to confirm his estimate, he stated that the loss amount was between $800,000 and $1,000,000, the latter figure being at the top of the range for a 14-level increase. *Id.* § 2B1.1(b)(1)(I).

After hearing testimony on the issue, the district court sustained Gadsden's objection and made a loss-amount finding of $1,000,000, yielding a 14-level increase.  Although Gadsden later preserved an objection to the sophisticated-means enhancement, he raised no objection to the loss amount.  From this record, it is clear that Gadsden argued for a loss amount that would necessarily result in a 14-level increase.  We are therefore precluded from reviewing the loss calculation and corresponding enhancement.  *See Love*, 449 F.3d at 1157.

## II.

Under the Sentencing Guidelines, a district court may apply a two-level enhancement if the offense "involved sophisticated means."  USSG § 2B1.1(b)(10)(C).  We review *de novo* the "district court's interpretation of the Guidelines and its application of the Guidelines to the facts."  *United States v. McGill*, 450 F.3d 1276, 1278 (11th Cir. 2006).  A district court's finding that sophisticated means were used is a finding of fact reviewed for clear error. *Barrington*, 648 F.3d at 1199.

4

"Sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."  USSG § 2B1.1, comment. (n.9(B)).  The Guidelines commentary identifies "the use of fictitious entities" as a type of conduct that, among others, "ordinarily indicates sophisticated means."  *Id.*  However, each action by a defendant need not be sophisticated in order to support this enhancement; it "is sufficient if the totality of the scheme was sophisticated."  *Barrington*, 648 F.3d at 1199.  A sophisticated-means enhancement may be appropriate upon a showing that the defendant engaged in "repetitive, coordinated conduct designed to allow him to execute fraud and evade detection."  *United States v. Bane*, 720 F.3d 818, 826–27 (11th Cir. 2013).

Gadsden argues that the district court clearly erred by finding that the conspiracy involved sophisticated means because the scheme, using bad checks to purchase goods to resell, was "simple in nature."  Furthermore, Gadsden argues, neither he nor the people he and his brother recruited attempted to conceal their involvement by use of false identities or fictitious entities.

The district court did not clearly err in applying a sophisticated-means enhancement.  Gadsden's scheme involved as many as 200 people whom he and his brother used to execute and conceal the fraud.  It spanned several years and affected businesses in Mississippi, Florida, Georgia, and Alabama.  The operation

5

consisted of coordinated and repetitive acts—the brothers recruited people to open fraudulent bank accounts; targeted businesses from which to purchase merchandise; and resold those goods at a profit. *See Bane*, 720 F.3d at 826–27 (holding sophisticated-means enhancement was not clear error when the defendant's "repetitive, coordinated" conduct allowed him to evade detection). In fact, Gadsden and his co-conspirators were coordinated enough to take orders from customers, later buying those items from specific businesses.

Gadsden may not have concealed his identity or used fictitious entities in the perpetration of this scheme. However, he and his brother coordinated as many as 200 people operating in a wide geographic area to achieve their ends. They bought goods for their customers in an organized, systematic fashion. Even if certain elements of the conspiracy resembled typical fraud, the district court did not clearly err in finding that the totality of the scheme was sophisticated. *See Barrington*, 648 F.3d at 1199. We affirm.

**AFFIRMED.**